WES JOSEPH PERTGEN, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 21141

May 31, 1994                                        875 P.2d 361

[Rehearing denied July 22, 1994]

*Sgro & Perry,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Wes Joseph Pertgen brutally murdered his landlord, who was found shot, stabbed, beaten and bound in a refrigerator. He also kidnapped, beat and raped a woman, who was found in a drainage ditch, chained and covered with sagebrush. He was convicted of first-degree murder with use of a deadly weapon, first-degree kidnapping with use of a deadly weapon, sexual assault with use of a deadly weapon, attempted murder with use of a deadly weapon, and possession of a firearm by an ex-felon. For committing these crimes, Pertgen was sentenced to death, and in addition, to four consecutive life terms, two consecutive twenty year terms, and one six year term. This capital case has previously been before this court on direct appeal. *See* Pertgen v. State, 105 Nev. 282, 774 P.2d 429 (1989) (affirming Pertgen's convictions and sentences).

Subsequent to this court's affirmance, on September 6, 1989, appellant filed in the district court a petition for post-conviction relief. Following an evidentiary hearing, the district court denied the petition. This appeal followed. Appellant raises issues pertaining to both the guilt phase and the penalty phase of his trial. We conclude that appellant's allegations of error in the guilt phase are without merit. We therefore affirm that portion of the district court's order. With regard to the penalty phase, we conclude that serious constitutional error infected the penalty hearing. The error prejudiced appellant's defense such that the imposition of the death penalty was improper. We are therefore constrained to reverse and remand for a new penalty hearing.

## DISCUSSION

*Guilt phase*

    1. *Validity of appellant's confession*

Appellant contends that his confession was obtained in violation of his Fifth and Sixth Amendment rights, and that therefore any evidence regarding his confession should have been suppressed. He asserts that this error prejudiced him because without evidence of the confession, he alleges that he could not be linked to the murder.

This issue was raised in appellant's direct appeal and rejected by this court. *See Pertgen,* 105 Nev. at 287, 774 P.2d at 432. Our previous holding on this issue is now the law of the case. Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975). The doctrine of the law

of the case cannot be avoided by a more detailed and precisely focused argument. *Id.* at 316, 535 P.2d at 799. Furthermore, the record is clear that appellant's confession was knowingly and voluntarily given. Appellant's contention therefore lacks merit.

### 2. *Ineffective assistance of counsel*

Next, appellant contends that he was denied effective assistance of counsel during the guilt phase of his trial. To state a claim of ineffective assistance of counsel that is sufficient to invalidate a judgment of conviction, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and that counsel's errors were so severe that they rendered the jury's verdict unreliable. *See* Strickland v. Washington, 466 U.S. 668 (1984); Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), *cert. denied,* 471 U.S. 1004 (1985).

Appellant bases his ineffectiveness claim on four assignments of error. First, he contends that trial counsel was ineffective for allowing appellant to testify at trial. Our review of the record, however, reveals that appellant testified against the advice of counsel. Appellant had a constitutional right to testify on his own behalf. Phillips v. State, 105 Nev. 631, 782 P.2d 381 (1989). Appellant has failed to demonstrate how allowing him to exercise his constitutional right to testify fell below an objective standard of reasonableness under *Strickland.*

Second, appellant contends that trial counsel was ineffective because counsel inadequately prepared and presented the insanity defense at trial. Appellant further contends that trial counsel failed to present the theory of diminished capacity to negate intent. Counsel's failure to obtain or present adequate psychiatric testimony regarding appellant's sanity was raised and rejected in appellant's direct appeal. *Pertgen,* 105 Nev. at 284, 774 P.2d at 430. Our previous holding on this issue is therefore the law of the case. Hall v. State, 91 Nev. 314, 535 P.2d 797 (1975). In addition, we conclude that counsel's failure to present a theory of diminished capacity was a tactical decision. Consequently, appellant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness under *Strickland.*

Third, appellant contends that trial counsel was ineffective because counsel failed to listen to the tape of appellant's confession, failed to introduce the tape into evidence at trial, and failed

to provide a copy of the tape to appellate counsel. This argument is premised on the assumption that the tape conflicted with the trial testimony regarding appellant's confession. Our review of the record, however, reveals that the testimony adduced at trial was not inconsistent with the taped confession. As previously determined, appellant's confession was not obtained unconstitutionally. Therefore, appellant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness under *Strickland.*

Fourth, appellant contends that trial counsel was ineffective because counsel failed to object to numerous instances of prosecutorial misconduct. Although we conclude that counsel's failure to object fell below an objective standard of reasonableness, we have determined that the errors were not so severe that they rendered appellant's convictions unreliable under *Strickland.* Accordingly, appellant's claim of ineffective assistance of counsel during the guilt phase of his trial must fail.

*Penalty phase*

1. *Preliminary comment*

Appellant challenges, on multiple grounds, the aggravating circumstances used to justify imposition of the death penalty in this case. To begin, we note that, although he could have, appellant did not raise these issues at trial or on direct appeal. As a general rule, issues raised in a post-conviction petition which could have been raised on direct appeal are considered waived absent a showing of good cause and actual prejudice. *See* former NRS 177.375(2); Johnson v. Warden, 89 Nev. 476, 477-78, 515 P.2d 63, 64 (1973).

Nevertheless, appellant argues that defense counsel should have raised these issues previously. He asserts that defense counsel should have challenged the constitutionality of the aggravating circumstances and should have noticed discrepancies between the notice of intent to seek the death penalty, the special verdict form, and the jury instructions. Appellant asserts that counsel's derelictions deprived him of his Sixth Amendment right to the effective assistance of trial and appellate counsel. *See generally,* Strickland v. Washington, 466 U.S. 668 (1984); Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), *cert. denied,* 471 U.S. 1004 (1985). He argues that these issues are not waived because counsel's ineffectiveness establishes both good cause and actual prejudice.

Under certain circumstances, a valid claim of ineffective assistance of appellate counsel may establish good cause such that we may review apparently meritorious issues that should have been raised on direct appeal. Under the unique circumstances of this case, we consider appellant's allegations to be sufficient to overcome this significant procedural hurdle. Moreover, the power of this court to address plain error or issues of constitutional dimension *sua sponte* is well established. Emmons v. State, 107 Nev. 53, 60-61, 807 P.2d 718, 723 (1991); *see also* Edwards v. State, 107 Nev. 150, 153 n.4, 808 P.2d 528, 530 n.4 (1991) (where appellant presents an adequate record for reviewing serious constitutional issues, this court will address such claims on the merits). Because this case involves the ultimate punishment and because appellant's claims of ineffective assistance of counsel are directly related to the merits of his claims, we will consider appellant's claims on the merits in order to determine whether appellant received ineffective assistance of counsel.

## 2. *Constitutionality of aggravating circumstances*

Appellant first challenges the two aggravating circumstances found by the jury to support his death sentence: "depravity of mind" and "torture." He contends that these aggravating circumstances were not supported by the evidence and that, because the terms "depravity of mind" and "torture" were not defined for the jury, they were unconstitutionally vague in violation of his Eighth Amendment rights. We agree that the terms "depravity of mind" and "torture" were unconstitutionally vague because they were not defined for the jury. Moreover, under the unique circumstances of this case, we conclude that the omission was highly prejudicial.

At the penalty hearing, the jury was given numerous instructions regarding its role in deciding the penalty, but no instructions regarding the definition of the aggravating circumstances upon which the state sought imposition of the death penalty. Instruction No. 7 listed the possible aggravating circumstances, which included the following:

4. The murder involved torture.
5. The murder involved depravity of mind.

Significantly, the jury was not instructed regarding the definition of "torture" or "depravity of mind," nor were any instructions given regarding the significance or meaning to attach to these

terms. The jury returned a special verdict in which two aggravating circumstances were written in by hand and checked: "The murder involved torture" and "The murder involved depravity of mind."[1] The jury found no mitigating circumstances. Thereafter, the jury sentenced appellant to death. *See* NRS 175.554.[2]

We hold that the failure to define the terms "depravity of mind" and "torture" for the jury constituted serious constitutional error. Preliminarily, we note that it is improper to refer to the aggravating circumstances found in this case, depravity of mind and torture, as constituting *two* aggravating circumstances. As we noted in Jimenez v. State, 106 Nev. 769, 774, 801 P.2d 1366, 1369 (1990), "[d]espite the disjunctive language used in NRS 200.033(8), the referenced provision embraces only one aggravating circumstance."[3] Thus, although the special verdict erroneously identified torture and depravity of mind as two separate aggravating circumstances, it should be read as enumerating only one aggravating circumstance, one which includes depravity of mind and torture as a single aggravating circumstance.

The state argues that NRS 200.033(8) passes constitutional muster. As a general proposition, the state is correct in its assertion that the statute has withstood constitutional scrutiny in Nevada. Cases in which we have upheld an aggravating circumstance based on NRS 200.033(8) are set forth in the margin. Significantly, however, each of the cases cited is distinguishable

---

[1]For an explanation of why these aggravating circumstances were not on the special verdict form provided to the jury and had to be written in by hand, see discussion at pages 565-566, *infra*.

[2]The version of NRS 175.554(2) then in effect provided, in part:

2. The jury . . . shall determine:

(a) Whether an aggravating circumstance or circumstances are found to exist;

(b) Whether a mitigating circumstance or circumstances are found to exist; and

(c) Based upon these findings, whether the defendant should be sentenced to life imprisonment or death.

The jury . . . may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.

The statute has since been amended. *See* 1993 Nev. Stat., ch. 182 § 2 at 322-23.

[3]NRS 200.033(8) provides as follows:

The only circumstances by which murder of the first degree may be aggravated are:

. . . .

8. The murder involved torture, depravity of mind or the mutilation of the victim.

from the case at bar because, in each instance, the jury was instructed regarding the definition of the applicable terms.[4]

By contrast, in this case the jury was given no definitions whatsoever to guide it in its application of the aggravating circumstance involving "depravity of mind" and "torture." Thus, this case is analogous to Godfrey v. Georgia, 446 U.S. 420 (1980), in which the United States Supreme Court overturned a death penalty conviction and noted that the trial judge's sentencing instructions "gave the jury no guidance concerning the meaning of [the applicable statutory] terms." *Godfrey,* 446 U.S. at 429. In *Godfrey,* the state courts had simply used the bare terms of the statute without giving the jury any instructions by which the meaning of those terms could be limited. *Id.* at 426. It was this lack of further definition which resulted in the Court's finding the aggravating circumstances unconstitutionally vague.

Similarly, under the circumstances of this case, the bare aggravating circumstance of depravity of mind and torture is unconstitutionally vague because the jury was not given any narrowing instructions. The case relied on by the state, Walton v. Arizona, 497 U.S. 639 (1990), supports our conclusion:

> When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process. It is not enough to instruct the jury in the bare terms of an aggravating circumstance that is unconstitutionally vague on its face. That is the import of our holding in *Maynard* [v. Cartwright, 486 U.S. 356 (1988)] and *Godfrey.*

*Id.* at 653. Although the Court upheld the imposition of a death sentence, *Walton* is factually distinguishable from the present

---

[4]*See, e.g.,* Parker v. State, 109 Nev. 383, 394-96, 849 P.2d 1062, 1069-70 (jury instructed regarding definitions of "mutilate" and "depravity of mind"), *cert. denied,* ...... U.S. ......, 114 S. Ct. 570 (1993); Robbins v. State, 106 Nev. 611, 627 n.4, 798 P.2d 558, 569 n.4 (1990) (jury was instructed regarding the definitions of "torture" and "depravity of mind"), *cert. denied,* 499 U.S. 970 (1991); Rogers v. State, 101 Nev. 457, 467, 705 P.2d 664, 671 (1985) (statute provides adequate guidance to the jury when the district court defines the terms "torture," "depravity of mind," and "mutilate"), *cert. denied,* 476 U.S. 1130 (1986); Neuschafer v. State, 101 Nev. 331, 336 n.2, 705 P.2d 609, 612 n.2 (1985) (penalty jury "fully instructed" on the applicable definitions); Ybarra v. State, 100 Nev. 167, 177, 679 P.2d 797, 803 (1984) ("depravity of mind" not unconstitutionally vague when the court "meticulously defined it for the jury"), *cert. denied,* 470 U.S. 1009 (1985); Deutscher v. State, 95 Nev. 669, 677, 601 P.2d 407, 412-13 (1979) (district court meticulously defined terms for the sentencing panel; jury was therefore provided adequate guidance for applying aggravating circumstances).

case. In *Walton,* the death sentence was imposed by a trial judge, who is presumed to know the law and to apply it in a constitutional manner. *Id.* By contrast, in this case the death sentence was imposed by a jury. A jury cannot be expected to know and apply the law in a constitutionally narrow manner unless it is properly instructed. In this instance the jury received no limiting instructions whatsoever regarding the sole aggravating circumstance. We therefore conclude that, under the circumstances of this case, an error of constitutional magnitude occurred because the terms "depravity of mind" and "torture" were not defined for the jury.

Our inquiry does not end at this juncture, however. In Clemons v. Mississippi, 494 U.S. 738, 741, 748-49, 752-54 (1990), the United States Supreme Court confirmed that reweighing and harmless error analyses, though not required, are constitutionally permissible under appropriate circumstances. Likewise, it is permissible for us to remand for resentencing when the circumstances necessitate such action. We have elected to follow each of these alternatives under appropriate circumstances. *See, e.g.,* Canape v. State, 109 Nev. 864, 876-83, 859 P.2d 1023, 1031-35 (1993) (applying *Clemons'* reweighing and harmless error analyses); Paine v. State, 107 Nev. 998, 1001, 823 P.2d 281, 283 (1991) (remanding for new penalty hearing).

Reweighing involves disregarding the invalid aggravating circumstances and reweighing the remaining permissible aggravating and mitigating circumstances. In this case, however, because the jury found no other aggravating circumstance besides depravity of mind and torture, disregard of the invalid aggravating circumstance leaves no valid aggravating circumstances remaining. Thus, there is nothing left to reweigh. Accordingly, reweighing is not a viable alternative under the circumstances of this case. *Cf.* Maynard v. Cartwright, 486, U.S. 356, 365 (1988).

Furthermore, we cannot conclude that the error regarding the aggravating circumstance was harmless beyond a reasonable doubt. *See* Chapman v. California, 386 U.S. 18, 21-24 (1967). To perform a proper harmless error analysis, we must thoroughly examine the role the invalid aggravating factor played in the sentencing process in order to ensure that an individualized sentencing determination has been made. Stringer v. Black, 503 U.S. 222, 230, 112 S. Ct. 1130, 1136 (1992). Where, as here, the death sentence has been infected by a vague or otherwise constitutionally invalid aggravating factor, we must "actually perform a new sentencing calculus" in order for the sentence to stand. Richmond v. Lewis, ...... U.S. ......, ......, 113 S. Ct. 528, 535 (1992).

In this instance, the jury was left with untrammeled discretion to impose or withhold the death penalty because it was not properly instructed regarding the sole aggravating circumstance of depravity of mind and torture. When the jury is left with unfettered discretion to impose the death penalty in an arbitrary or capricious manner, a violation of the Eighth and Fourteenth Amendments occurs. Furman v. Georgia, 408 U.S. 238 (1972). "[T]he channelling and limiting of the sentencer's discretion in imposing the death penalty is a fundamental constitutional requirement for sufficiently minimizing the risk of wholly arbitrary and capricious action." Maynard v. Cartwright, 486 U.S. 356, 362 (1988); see Stringer v. Black, 503 U.S. 222, 235-236, 112 S. Ct. 1130, 1139 (1992) (vague aggravating circumstance fails to channel sentencer's discretion).

Moreover, our review of the pertinent case law has revealed no cases in which the sentence has been upheld when the sole aggravating circumstance has been found to be constitutionally inadequate. The presence of at least one valid aggravating circumstance is a fundamental prerequisite in determining whether a defendant is eligible for the death penalty. See NRS 175.554 ("The jury . . . may impose a sentence of death only if it finds at least one aggravating circumstance . . . ."). When we are presented with no valid aggravating circumstances, we cannot uphold the death sentence because the presence of aggravating circumstances is the very cornerstone of our capital sentencing scheme. Thus, in this case, despite the presence of facts which could support the aggravating circumstance of depravity of mind and torture, the sentence cannot stand because of the absence of any constitutionally valid aggravating circumstances.

Accordingly, we are compelled to conclude that the death penalty in this case was imposed in an arbitrary and capricious manner. The sentence does not comply with the narrowing requirement of *Furman* and its progeny, nor does it comply with our statutory sentencing scheme. Appellant's claim that he was denied the effective assistance of counsel has merit because counsel failed to challenge the constitutionality of appellant's sentence. Counsel's performance therefore fell below an objective standard of reasonableness. Moreover, appellant has demonstrated that counsel's deficient performance prejudiced his defense to such a degree that it rendered his sentence unreliable. *Strickland,* 466 U.S. at 687. Consequently, we must reverse and remand for a new penalty hearing.

### 3. *Notice of aggravating circumstances*

Appellant next contends that he was given inadequate notice of aggravating circumstances and an insufficient opportunity to defend against them, in violation of his constitutional rights. The aggravating circumstances listed on the special verdict form differed from those listed on the Notice of Intent to Seek the Death Penalty.[5] The jury instructions mirrored the Notice of Intent to Seek the Death Penalty, not the special verdict form. Because the special verdict form listed three aggravating circumstances which were not contained in the Notice of Intent to Seek the Death Penalty, and on which the jury was not instructed, appellant contends that he was deprived of his right to be notified of the aggravating circumstances against which he would have to defend himself. *See* former NRS 175.552.[6] He contends that this error

---

[5]It appears that the jury was mistakenly given the wrong verdict form. The Notice of Intent to Seek the Death Penalty listed five aggravating circumstances. They were:

(1) The murder was committed by a person who was previously convicted of a felony involving the use of threat of violence to another.
. . .
(2) The murder was committed while the person was engaged in the commission of or an attempt to commit any robbery. . . .
(3) The murder was committed while the person was engaged in the commission of or an attempt to commit any sexual assault. . . .
(4) The murder involved torture. . . .
(5) The murder involved depravity of mind. . . .

The special verdict form provided to the jury listed the following aggravating circumstances:

...... The murder was committed by a person under sentence of imprisonment.
...... The murder was committed by a person who was previously convicted of a felony involving the use or threat of violence to the person of another.
...... The murder was committed while the person was engaged in the commission of a robbery or burglary.
...... The murder was committed for the purpose of avoiding or preventing a lawful arrest.

When the jury returned the special verdict form, none of the above choices was checked (the aggravating circumstance involving robbery or burglary had been checked, but the checkmark was subsequently scratched out by the jury foreman). The following aggravating circumstances, however, were written in by hand and checked:

..x.. The murder involved torture.
..x.. The murder involved depravity of mind.

[6]NRS 175.552 has since been amended. The relevant portion of the statute may now be found at NRS 175.552(3). *See* 1993 Nev. Stat., ch. 182 § 1 at 322.

violated his Eighth and Fourteenth Amendment rights. Appellant concedes that the jury did not find any of the aggravating circumstances typed on the special verdict form, but nevertheless contends that he was prejudiced by their presence on the verdict form because the jury was allowed to consider many more choices than it should have.

Appellant has failed to establish that a prejudicial error occurred when the jury was mistakenly given the wrong verdict form. Pursuant to former NRS 175.552, at the penalty hearing "[t]he state may introduce evidence of additional aggravating circumstances . . . only if it has been disclosed to the defendant before the commencement of the penalty hearing." (Now NRS 175.552(3), see 1993 Nev. Stat., ch. 182 § 1 at 322.) The purpose of this rule is to provide the accused notice and to insure due process so that the accused can meet any new evidence which may be presented during the penalty hearing. Emmons v. State, 107 Nev. 53, 62, 807 P.2d 718, 724 (1991). The erroneous inclusion of three additional aggravating circumstances which were not included in the notice of intent to seek the death penalty was not violative of NRS 175.552 because the state did not introduce evidence of the three aggravating circumstances at issue.

Nevertheless, under the doctrine of cumulative error, we consider this issue as providing additional support for our decision to reverse and remand for a new penalty hearing. Cf. Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986) (although individual errors may be harmless, the cumulative effect of multiple errors may deprive a defendant of the constitutional right to a fair trial). Although providing the jury the wrong special verdict form was, by itself, insufficient to warrant reversal, the cumulative effect of the various errors committed during the penalty phase warrant reversal. "The accumulation of error is more serious than either isolated breach, and resulted in the denial of a fair trial." Sipsas, 102 Nev. at 125, 716 P.2d at 235. When viewed in concert, the errors committed during the penalty phase of appellant's trial were of such magnitude that we are unable to consider them to be harmless beyond a reasonable doubt. Neither trial counsel nor appellate counsel challenged these obvious errors. Thus, appellant has established that counsel was ineffective and that he has not waived these issues. See Strickland v. Washington, 466 U.S. 668 (1984); former NRS 177.375(2); Johnson v. Warden, 89 Nev. 476, 477-78, 515 P.2d 63, 64 (1973).

## CONCLUSION

For the reasons set forth above, we affirm the district court's order with regard to the guilt phase of appellant's trial. We

reverse the district court's order with regard to the penalty phase. We remand this case to the district court with instructions that it conduct a new penalty hearing that comports with the views expressed in this opinion.

ROSE, C. J., STEFFEN and YOUNG, JJ., and HUFFAKER, D. J.,[7] concur.